UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAL HAYDON,<br><br>                           Petitioner,<br><br>    vs.<br><br>D. K. SISTO,<br><br>                           Respondent. | Civil No.   2:07-cv-01611-MMM<br><br>**ORDER DENYING PETITION<br>FOR WRIT OF HABEAS CORPUS** |

    Hal Haydon challenges the Board of Parole Hearings' ("the Board") finding that he is unsuitable for parole. Haydon asserts that the Board violated his federal due process rights because the Board's decision was not supported by sufficient evidence, the Board did not properly weigh and consider positive factors, and the Board impermissibly relied on Haydon's commitment offense when making its unsuitability finding. Haydon also argues that the Board's decision violated his plea agreement and impermissibly extended his sentence beyond the statutory maximum in violation of the United States Supreme Court's directive in *Apprendi v. New Jersey*, 530 U.S. 466, 476 (U.S. 2000). Because there is "some evidence" in the record to support the Board's conclusions, *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007), and the Board's decision did not violate Haydon's plea agreement or extend the statutory maximum for his offense, *In re Dannenberg*, 104 P.3d 783, 786 (Cal. 2005), Haydon's petition for a writ of habeas corpus is denied.

## BACKGROUND

Haydon pled guilty to second degree murder. The facts of his crime, as read by the Board's presiding commissioner, are that

> [o]n the night of April 20th, 1988 . . . Haydon had gone to a house party to smoke crack cocaine. In exchange [for cocaine], Haydon loaned his borrowed vehicle to a young man who did not return it. When the car did not materialize the next morning, Haydon lit a fire in the living room and left. Three of the four individuals sleeping in the house managed to escape the fire. The fourth individual, the victim[,] was trapped in a bedroom. . . and died.

Hr'g Tr. at 7-8.

Haydon was sentenced to fifteen years to life. His sentence commenced in 1991. On November 28, 2006, the Board denied Haydon's request for parole. The Board found that Haydon was "not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." *Id.* at 89. The Board relied, in part, on the fact that Haydon's "commitment offense . . . was carried out in an especially cruel and callous manner;" it had many potential victims, it displayed "exceptionally callous disregard for human suffering," and "the motive for the crime was inexplicable." *Id.* at 90. The Board noted, however, that "the biggest issue" was Haydon's failure to show consistent efforts at rehabilitation. *Id.* at 91. Although Haydon had participated in rehabilitative programs during his confinement, and had made laudable progress during the year prior to the hearing, Haydon "spent a considerable amount of time in the institution without doing much of anything," and needed to show "consistent programming over time." *Id.* at 91. The Board also noted that Haydon's work plans were "weak." The Board believed Haydon was "setting [himself] up for failure," by making work plans that involved driving five hours a day, despite the fact that Haydon had not driven in over twenty years and did not have a driver's license. *Id.* at 92.

Haydon challenged the Board's unsuitability finding in the Alameda County Superior Court. The court denied Haydon's petition because it found that the Board's decision was supported by "some evidence," "including, but not limited to the committing offense, [Haydon's] lack of longer term, consistent self help programming . . . [Haydon's] need to upgrade academically, and the Board's opinion that [Haydon] needs to have more concrete, realistic and specific parole plans." *Haydon v. California*, Case No. 95433 (Alameda County

Super. Ct. April 27, 2007). Haydon's appeals were summarily rejected by the California Court of Appeal and the California Supreme Court.

## ANALYSIS

### A. Standard of Review

"Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), [federal courts] may not grant relief to a state habeas petitioner unless the state courts' failure to grant relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Brazzel v. Washington*, 491 F.3d 976, 981 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000) (concluding that "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions.") "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2). To satisfy this standard, a petitioner must demonstrate that the state court relied on factual findings that were objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

When analyzing claims, federal courts will "look to the last reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) ("Because, here, neither the court of appeal nor the California Supreme Court issued a reasoned opinion on the merits of this claim, we look to the trial court's decision."). Because the California Court of Appeal and the California Supreme Court denied Haydon's petition without comment, the opinion by the Alameda County Superior Court is the last reasoned state court decision.

**B.     The Board's Findings**

The United States Supreme Court has instructed that courts must "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (internal cites omitted). The Ninth Circuit has recognized that California prisoners have a liberty interest in parole. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006). Therefore, the issue is "whether the deprivation of this interest, in this case, violated due process." *Id.* The Ninth Circuit has concluded that "the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'" *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Hill*, 472 U.S. at 457; *Sass*, 461 F.3d at 1128-29).

"To determine whether the 'some evidence' standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).

"When [courts] assess whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, [their] analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. Accordingly, the court must first "look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole." *Id.* Then, the court "must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' . . . constituted an unreasonable application of the 'some evidence' principle . . . ." *Id.*

4

California has promulgated regulations regarding suitability for parole. Under the regulations, the Board may consider whether the underlying offense was committed in an especially "heinous, atrocious, or cruel manner." This involves inquiry into whether multiple victims were attacked, whether the offense was carried out in a dispassionate or callous manner, and whether the motive for the crime was "inexplicable." *See* Cal. Code Regs., tit. 15, § 2402(c)-(d). The Board reviewed the facts of Haydon's crime and determined that multiple individuals were threatened because the fire could have spread to the entire building, Hr'g Tr. at 90, it was set with callous disregard for the suffering of the people in the building, *id.*, and Haydon's professed motive—that he wanted to get somebody's attention—"was inexplicable," *id.*[1]

While the Ninth Circuit has cautioned that continued reliance on "immutable behavioral evidence" such as the underlying offense, could conceivably violate due process, *see Sass*, 461 F.3d at 1129; *Biggs*, 334 F.3d at 915-17, this was not the sole or even the primary basis for the Board's decision. The Board stated that the "biggest issue" was Haydon's failure to be consistent in his rehabilitation efforts. The Board also cited Haydon's unrealistic parole plans. A prisoner's failure to show consistent improvement raises doubts about whether the prisoner's rehabilitation will continue after parole or whether the prisoner will return to his old habits. Combined with Haydon's lack of concrete parole plans, this constitutes evidence that, in the words of the Board, Haydon was "setting [himself] up for failure" if released, and posed a danger to society if he began to once again engage in criminal behavior. Consequently, the evidence of Haydon's heinous underlying offense, his failure to show consistent progress, and his lack of firm parole plans constitute "some evidence" that is sufficient to support the Board's

---

[1] Haydon is correct that the regulations also delineate factors demonstrating suitability for release. *See* Cal. Code Regs., tit. 15, § 2402(d). Even assuming Haydon satisfied some of these factors, the regulations give the Board discretion regarding how much weight to accord each factor. *See* Cal. Code Regs., tit. 15, § 2281(c) ("the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel."). Here, the Board considered several positive factors and commended Haydon on his progress, but ultimately determined that these factors were outweighed by others indicating that Haydon was unsuitable for parole. Haydon has not demonstrated that the Board failed to properly weigh the factors and reach an objectively reasonable determination. *See In re Lee*, 143 Cal. App. 4th 1400, 1408 (Cal. Ct. App. 2006).

denial of parole. Because there is "some evidence" in the record to support the Board's finding that Haydon would pose an unreasonable risk of danger to society or a threat to public safety if released, and because that evidence has sufficient indicia of reliability, no federal due process violation occurred. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128. Accordingly, the state court's denial of Haydon's petition was not contrary to, or an unreasonable application of, clearly established federal law. Nor was the court's decision based on an unreasonable determination of the facts.

### C. The Matrix of Base Terms

The next issue is whether Haydon's continued confinement violates his plea agreement or the Supreme Court's directive in *Apprendi*, 530 U.S. at 476. On this issue, the Alameda County Superior Court's denial of relief is reviewed for clear error because the court did not address this argument when denying relief. *Brazzel v. Washington*, 491 F.3d 976, 981 (9th Cir. 2007) (quoting *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.2002) (stating that when a "state court reaches a decision on the merits but provides no reasoning to support its conclusion . . . [federal courts] independently review the record to determine whether the state court clearly erred in its application of Supreme Court law."). Haydon argues that the Board's decision extended his sentence beyond the guidelines specified in the Matrix of Base Terms for Second Degree Murder (the Matrix of Base Terms). Cal. Code. Regs tit. 15, § 2403. He argues that the decision violated his plea agreement and impermissibly extended the statutory maximum for his sentence in violation of *Apprendi*, 530 U.S. at 476. Haydon's argument falters because there is no evidence the Matrix of Base terms was referenced in his plea agreement. The California Supreme Court has foreclosed Haydon's argument that the Matrix of Base terms establishes the statutory maximum sentence for his offense. *In re Dannenberg*, 104 P.3d 783, 786 (Cal. 2005) (concluding the matrixes do not come into effect until *after* the Board has found a prisoner suitable for parole). The statutory maximum for Haydon's crime is life in prison. Cal. Penal Code § 190(a) ("every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life."). Haydon is, therefore, not entitled to habeas relief.

## CONCLUSION AND ORDER

The Petition for Writ of Habeas Corpus is **DENIED**.

DATED: September 9, 2009

M Margaret McKeown
HON. M. MARGARET MCKEOWN
UNITED STATES CIRCUIT JUDGE
SITTING BY DESIGNATION

CC:   ALL PARTIES